121    283
128    581
121    283
s80NW    28
121    283
s80NW    28
e133    493
121 ⅟ 283
142    381
121    283
d152    351

## BRINKER *v.* MICHIGAN CENTRAL RAILROAD CO.

RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.
Where parallel railroad tracks crossed a country highway at points 264 feet apart, one who, while driving slowly along the highway, saw, as he neared a crossing, the smoke of an approaching train, but, supposing it to be on the other railroad, without taking advantage of a practically unobstructed view to look and ascertain the fact, went upon the crossing, and was struck by the train and injured, was guilty of contributory negligence, precluding a recovery against the company, although an automatic signal on which he was relying was out of order and failed to work.

Error to Saginaw; Snow, J.    Submitted June 8, 1899. Decided September 19, 1899.

Case by John Brinker against the Michigan Central Railroad Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

Plaintiff was injured by a collision with a regular passenger train on the defendant's railroad at the highway crossing where defendant's track crosses Carrollton avenue, near the northern limits of the village of Carrollton. The highway on which plaintiff was traveling runs nearly north and south between the villages of Zilwaukee and Carrollton. For a distance of about one mile north of the crossing where the accident occurred, the highway, the track of the Interurban Electric Railway, the track of the defendant, and the track of the Cincinnati, Saginaw & Mackinaw Railroad run parallel with each other, in the following positions: The highway is farthest west; the Interurban track is 12 feet east of the center of the highway; the defendant's track is 24 feet east of the Interurban track; and the Cincinnati, Saginaw & Mackinaw track

is 73 feet east of the defendant's track, and is $2\frac{1}{2}$ feet higher than defendant's track. Four hundred and fifteen feet north of the point of the accident, the defendant's track begins to curve to the west, and that curve continues until it crosses both the Interurban track and the highway at an acute angle. The Cincinnati, Saginaw & Mackinaw track also curves to the west, and crosses both the Interurban track and the highway at a distance of 264 feet south of where defendant's track crosses. Both the highway and the Interurban track continue in a straight line to the south, but the wagon track, or traveled portion of the highway, where it crosses defendant's track, makes a sharp bend in an easterly or southeasterly direction, so as to cross the track squarely. The highway is sandy and level, and, at a point opposite the commencement of the curve in defendant's track, it is $2\frac{1}{2}$ feet lower than defendant's track. It gradually rises, and crosses at grade. On the west side of the highway, 110 feet south of where it crosses defendant's track, is an automatic electric alarm bell. This bell was erected several years ago, upon the order of the commissioner of railroads. This bell is arranged to begin ringing when a train comes within 60 rods of the crossing, and to continue until the train has passed. North of the highway crossing, and between the Interurban track and defendant's track, is a row of large poles, supporting the trolley wire of the Interurban road. These poles are 25 feet high, about one foot in diameter, and are placed 80 feet apart. The land surrounding this crossing and the tracks all the way between Carrollton and Zilwaukee is flat and level, with no cuts or embankments to interfere with the view of defendant's road from the highway; and there are no obstructions north of the crossing, except the poles of the Interurban Railway.

Plaintiff had lived in the vicinity 30 years, and was thoroughly familiar with the situation. He had a horse and wagon, loaded with grain. He testified that he was going "about half as fast as a man can walk,—about two hours for a mile." He saw the smoke of the approaching train, but testified:

"I thought it was a train on the C., S. & M. track. I saw the smoke when I looked behind me. The last time I looked, I was about two or three rods from the crossing. I kept looking all the time for the crossing bell [meaning the electric bell]. I am certain it did not ring."

In directing the verdict for the defendant, the court used the following language:

"The undisputed evidence in this case shows that the injury for which plaintiff has sued occurred about 25 minutes past 7 on the morning of May 3d last, in broad daylight, at a crossing where the ground is level, with no holes, cuts, or embankments to interfere with the plaintiff's view of defendant's road; that the only obstruction to a perfect view of the defendant's track for at least three-quarters of a mile above this crossing were poles of the Interurban road between the Interurban road and the Michigan Central track. I charge you that, as appears from the photograph introduced in evidence, which is introduced in evidence by the plaintiff, was taken with the camera standing upon the crossing where the plaintiff was injured, it conclusively appears that a person at the north of the crossing could see between the electric poles, and see a train approaching this crossing at a distance at least of 700 feet or more, and that, just prior to the accident, the plaintiff had seen the smoke of the train approaching, but supposed that it was on the C., S. & M. track, and continued right on across this crossing, without stopping his horse to look or listen for the approaching train; and I charge you that, under this undisputed evidence and the law in the case, this amounted to contributory negligence upon the part of the plaintiff, which would prevent his recovery.

"I charge you that the fact that the defendant had put up an electric bell at this crossing does not relieve the plaintiff from the duty of looking and listening for approaching trains; and the evidence is conclusive in this case that, if the plaintiff had looked and listened attentively when within from two to ten rods of this crossing, he would have both seen and heard the approaching train in time to have avoided the accident, and that his not looking and listening attentively after having seen the smoke of this train, and knowing that the train was approaching, was contributory negligence on his part, which will prevent his recovery. The evidence is undisputed in

this case that the whistle upon the train causing the in-jury was blown for this crossing, and that the crossing whistle of this train for this crossing was heard by others in practically the same situation that the plaintiff was in, and no nearer to the whistle than the plaintiff was at the time of the blowing of the whistle. It is also un-disputed that the bell upon the engine was ringing at the time of the accident, when the train was approaching the crossing; that if the plaintiff had, within a reasonable distance before going upon this crossing, looked and listened attentively, he would have heard these statutory signals given by the defendant for this crossing, and the accident would have been avoided. I charge you that this failure to listen and to look attentively for the ap-proaching train was negligence upon his part, which con-tributed to the injury which he received, and, for these reasons that I have given you, the plaintiff is prevented from recovering in this action, and your verdict must be in favor of the defendant, of no cause of action. This is the law governing the case, and it is my duty, as a court, to give you the law, without favor or partiality to either party."

*Crane & Crane*, for appellant.

*Watts S. Humphrey*, for appellee.

GRANT, C. J. (*after stating the facts*). The charge of the court was correct, both as to the facts and the law. Plaintiff was not hampered by the care of his horse. He was in no more dangerous position than he would have been on foot. He testified that in the sand his horse and wagon made no noise. He could have stopped as quickly as if he had been walking. He alone was responsible for supposing that the train was on the other road. He knew that a train was approaching, and it was his duty to stop and ascertain which road it was on. There was no occas-ion for hurry. He was the master of his own movements, and slight precaution would have averted the accident. *Mahlen* v. *Railway Co.*, 49 Mich. 585. He had knowl-edge that a train was approaching, and needed no other warning. *Haas* v. *Railroad Co.*, 47 Mich. 401; *White* v. *Railway Co.*, 102 Wis. 489.

In this view of the case, it is unnecessary to discuss the questions arising from the use of the electric bell.

Judgment affirmed.

The other Justices concurred.